[Sac. No. 4524. In Bank.—April 24, 1931.]

PACIFIC FRUIT EXCHANGE, Appellant, v. F. W. BARKHAUS et al., Respondents.

Athearn, Chandler & Farmer and Frank R. Devlin, Walter Hoffman and T. L. Chamberlain for Appellant.

H. W. Zagoren and K. D. Robinson for Respondents.

CURTIS, J.—Plaintiff is a corporation engaged in the business of shipping and selling fruit on commission. It also loans money to growers in order that the latter may care for their orchards and produce crops of fruit. The defendants were the owners of certain fruit farms, and the lessees of other lands. They entered into a contract with plaintiff on February 8, 1927, by the terms of which the plaintiff agreed to finance defendants' farming ventures to the extent of $25,000 for each of three years of 1927, 1928 and 1929. To secure these advances the defendants gave to plaintiff what is referred to in the agreement of February 8, 1927, as a mortgage-marketing contract covering their said lands and the crops grown thereon and on the lands leased by them. It is only necessary to refer to two paragraphs of the agreement of February 8, 1927. One reads as follows:

"Said mortgage-marketing contract shall be the usual form of the second party and the first parties agree to pay the second party its usual rates of commission for marketing said crops, namely, 7 per cent commission on all auction or delivered sales and 10 per cent on all f. o. b. California sales. Said mortgage-marketing contract is to cover three crops, 1927, 1928 and 1929, with the under-standing that should the first parties sell all or any portion of the orchards owned by them, hereinbefore mentioned, or cancel any of the leases on the orchards now farmed by the first parties, then in that event upon payment by first parties to second party of a proportionate amount of the

indebtedness then owing from first parties to second party, second party agrees to release its mortgage lien on any of said acreage sold or lease canceled."

The second paragraph is in the following language:

"In consideration of this financing by the parties of the second part for the account of the first parties, it is agreed that any and all fruit crops owned or controlled by first parties in California during the term of this contract shall be controlled and marketed by the second party herein, and under the terms of said mortgage-marketing contract for the account of the first parties."

The parties operated under this agreement and mortgage-marketing contract during the year 1927, and up to March, 1928, when the defendants sold all of their lands together with the leases they held on the lands not owned by them. The defendants then paid to the plaintiff their entire indebtedness and asked to have their mortgage satisfied and to be released from their agreement to deliver any further fruit under their agreement of February 8, 1927. Plaintiff released the mortgage and also released defendants from their agreement to deliver any further fruit grown on the land owned by them, but refused to release defendants from their agreement to deliver the fruit grown by them upon their leased land. This refusal was based upon the language of the first paragraph of the agreement of February 8, 1927, quoted above, and upon the fact that the leases were not canceled but were simply assigned to the parties who had purchased defendants' land. No further fruit was delivered under the agreement, whereupon the plaintiff at the close of the shipping season of 1928 brought this action to recover damages against defendants for their failure to deliver the fruit grown on two of the leased premises (the third was omitted for valid reasons not material to this action) for the year 1928. It was stipulated that the amount of such damage, "if plaintiff was entitled to recover any amount, was the sum of $986.49".

The trial court sitting without a jury rendered judgment in favor of the defendants, from which the plaintiff has appealed.

It is the contention of the appellant that said judgment is erroneous for the reason that while the evidence

shows that defendants sold their lands, and were, therefore, released from any further obligation to deliver fruit grown thereon, and that although they sold and assigned the leases held by them of lands owned by other persons, they were not entitled to a release from their agreement to deliver fruit grown on these leased lands for the reason that these leases were not canceled as provided by the agreements between the parties. It is conceded that said leases were not canceled by the defendants but that they were sold by them to third parties. The question thus raised by the appellant necessitates a construction of the agreements between the parties, and particularly of that of date of February 8, 1927, and the two paragraphs thereof quoted above.

By the first of said quoted paragraphs it is provided that the mortgage-marketing contract, to be thereafter entered into between said parties, shall provide for the usual rates of commission for marketing said crops. With this provision we are not concerned. The remaining portion of the paragraph provides that the mortgage-marketing contract is to cover the three years of 1927, 1928 and 1929, with a proviso that should the defendants sell any portion of the orchards owned by them, or cancel any of the leases on the orchards then farmed by the defendants, the plaintiff would upon payment to it of a proportionate amount of the indebtedness then owing by the defendants release its mortgage lien ''on any of said acreage sold or lease cancelled.'' It will be observed that this paragraph of the agreement refers entirely to the mortgage-marketing contract, and to the release of the mortgage lien created thereunder. It has no reference to any agreement regarding the marketing of fruit grown by the defendants except as provided in the mortgage-marketing contract. In so far as the agreement of February 8, 1927, provides for the delivery of fruit by defendants to be marketed by the plaintiff, that subject is controlled by the other paragraph of said agreement quoted above, and which we will refer to later.

Returning for the present to the first paragraph quoted above, it is conceded that the defendants have paid all amounts advanced to them or due from them by the terms of the mortgage-marketing contract, and that the plaintiff has released and discharged its mortgage lien upon all of

said lands, including those which defendants held under lease as well as those which they owned in fee. If it be conceded for the purpose of this case that the defendants were not entitled to a release of said leased lands from the terms of said mortgage-marketing contract, as they did not cancel the leases held by them, so long as the plaintiff accepted the entire sum due from defendants under said mortgage-marketing contract, and released said leased lands from the terms of said mortgage lien, the plaintiff, in the absence of fraud, would not be permitted to question this release in any proceeding thereafter instituted. In fact, plaintiff does not question the validity of said lease, but contends that the provisions of said paragraph regarding the release of lands from the mortgage lien controls or governs the agreement of the defendant to deliver fruit grown by them to the plaintiff for marketing purposes. As we have already observed, no reference is made in said paragraph to any agreement for the delivery of fruit or to any terms or conditions under which the defendants might be released from their agreement as to delivery of fruit.

The agreement by which the defendants bound themselves to deliver fruit grown by them to the plaintiff for the purpose of having the same marketed is contained in the second paragraph of said agreement quoted above, and which for convenience we will repeat. It reads as follows:

"In consideration of this financing by the parties of the second part for the account of the first parties, it is agreed that any and all fruit crops owned or controlled by first parties in California during the term of this contract shall be controlled and marketed by the second party herein, and under the terms of said mortgage-marketing contract for the account of the first parties."

It will be noted that no direct reference is made therein to any fruit grown by defendants on their own lands or on lands leased by them from other parties. The terms thereof are general and refer to "all fruit crops owned or controlled by first parties (the defendants) in California during the term of this contract". It is sufficiently comprehensive, however, to include the fruit grown by the defendants on the lands described in said agreement which include

lands both owned by defendants and lands held by them under lease. It will be further observed that it refers only to "any and all fruit owned or controlled by first parties in California during the term of this contract". When defendants sold their lands they, of course, ceased to own or control any fruit thereafter grown thereon. The same statement is true regarding fruit grown on the leased lands after the defendant had sold and assigned the leases thereof. We have searched both the agreement of February 8, 1927, and the mortgage-marketing contract for any provision or stipulation which directly or indirectly places any restraint upon the defendants in the sale or other disposal of their lands owned or leased during the term of said contract. The only condition imposed in that respect is that which we have already discussed and which contains the provision that defendants before they are entitled to a release from the mortgage-marketing contract must make payment to the plaintiff as set forth in the paragraph of the agreement of February 8, 1927, first herein quoted. This paragraph, as we have seen, had been fully complied with by the defendants long prior to the institution of this action, and besides, as above noted, it in no way related to any agreement between the parties regarding the marketing of fruit grown by defendants.

There are certain provisions in the mortgage-marketing contract which on first reading might be considered as an agreement by defendants to place all of the fruit produced by defendants on their lands during said three years in the hands of the plaintiff to be marketed by the latter. One of these reads as follows:

"Also in consideration of the sum of one dollar in hand paid by the second party to first parties, and other valuable considerations, the receipt of which is hereby acknowledged, the parties of the first part (the defendants) hereby place their entire crops of deciduous fruit and grapes for the seasons of 1927–28–29 of good merchantable quality, suitable for marketing, in the hands of the party of the second part, to market for their account."

This provision of the contract differs little from that in the agreement of February 8, 1927, which we have already discussed. Undoubtedly if the defendants produced or

owned any crops of fruit of the character just described, during the three seasons covered by the contract, they would be under obligation to deliver them to the plaintiff to be marketed on their account. But defendants are not shown to have produced or owned during these years any crops of fruit, except the crop of 1927, which they had marketed through the plaintiff. They sold their lands and disposed of their leases in the early part of the year 1928, and before any crops of fruit had been produced either on their own lands or on those held by them under lease. What we have stated regarding the similar provision in the agreement of February 8, 1927, applies to the above provision quoted from the mortgage-marketing contract, and it is not necessary to again repeat this statement.

The plaintiff has called our attention to the following paragraph from the mortgage-marketing contract:

"And the first parties herein have stated that the average production and shipment of fruit from all the properties named herein would be eighty to one hundred (80 to 100) carloads each year, and the total sum of twenty-five thousand and no/100 ($25,000.00) dollars financing agreed upon herein is based upon securing for the second party the marketing of eighty to one hundred carloads of fruit each year for the account of the first parties, and this is the basis upon which said financing or future financing by second party, or releasing of crops from this contract and said mortgage-marketing contract shall be computed on a proportional basis."

The plaintiff contends that when this paragraph is read in connection with the paragraph of said contract first above quoted that the words "mortgage lien" occurring in the latter paragraph is in some way enlarged to include the "obligation by defendants to market their fruit with the Pacific Fruit Exchange", and, therefore, the marketing agreement could only be brought to a close by a cancellation of the leases. It is true that this last-quoted paragraph does refer to "releasing of crops from this contract and said mortgage-marketing contract shall be computed on a proportional basis", and the only other provision in the contract providing for a release from the mortgage-marketing contract upon a proportional basis is found in the para-

graph of said contract first quoted herein. It is therein referred to as a "mortgage lien" and by reading this paragraph in its entirety, it is clear that it refers simply to the lien created upon the fruit by the execution of the mortgage-marketing contract. It well may have been the intention of the parties to have included in said contract a stipulation .for the proportional release of the agreement providing for the marketing of said fruit, but if such was their intent they failed completely to effect the same. Not only so, but we are unable to find any provision in either of said agreements whereby the defendants obligated themselves to market all fruit grown on their lands, either owned or leased, during the three seasons of 1927, 1928 and 1929. When we look at the mortgage its terms are direct and certain, and provide for the mortgaging of "the crops . . . of every description now growing or to be grown during the seasons of 1927-28-29 . . . upon those certain pieces or parcels of land" (describing them). When we come to the agreement providing for the marketing of the fruit we find the language to be as follows: "all fruit crops owned or controlled by first parties in California during the term of this contract" or "their entire crops of deciduous fruit and grapes for the seasons of 1927-28-29". As said before, the contract for the marketing of fruit applies only to such crops of fruit as the defendants may have owned or controlled during the three-year term of said contract, and unless the defendants owned or controlled crops of fruit during this time and failed to deliver them to the plaintiff to be marketed, they had not breached their contract with the plaintiff. As the evidence shows that the defendants had sold their lands and their leases, and neither owned nor controlled any crops of fruit during these three years, except in the year 1927, all of which they delivered to the plaintiff to be marketed for their account, no cause of action has. been proven against the defendants.

The judgment of the trial court in favor of the defendants should therefore be affirmed, and it is so ordered.

Preston, J., Shenk, J., Richards, J., Seawell, J., Langdon, J., and Waste, C. J., concurred.

Rehearing denied.